**WARDS COMPANY, INC.**

v.

**CONNECTICUT POST LIMITED PARTNERSHIP.**

**Civil No. B–83–90 (PCD).**

United States District Court, D. Connecticut.

Feb. 8, 1984.

Ronald J. Cohen, Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for plaintiff.

Gregory Nye, Hebb & Gitten, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

DORSEY, District Judge.

This action by plaintiff, Wards Company, Inc. (Wards), against the defendant, Connecticut Post Limited Partnership (Connecticut Post), commenced in the Connecticut Superior Court on January 10, 1983, was removed to this court by defendant on February 7, 1983.

Connecticut Post moved to dismiss, alleging that Wards, a Virginia corporation, is not registered to do business in Connecticut and is, therefore, barred from maintaining this action in Connecticut even in its district court. *See Noel v. St. Johnsbury Trucking Co.*, 147 F.Supp. 432 (D.Conn.1956). For the purposes of this motion the facts pleaded are assumed to be correct.

On August 2, 1977, MultiVest Real Estate Fund, Ltd., Series III ("MultiVest"), a Michigan limited partnership, owner of the Connecticut Post Shopping Center ("Center"), leased certain premises therein ("the premises") to Lafayette Radio Electronics Operating Corp. ("Lafayette"), a New York corporation, by a written lease ("the lease"). *See* Complaint, pp. 1–2. On November 30, 1979, MultiVest sold the Center and assigned the lease to Connecticut Post. Despite Lafayette's demand, Connecticut Post refused to deliver the premises to it and thereafter leased the premises to other tenants.

On January 4, 1980, Lafayette filed a Chapter II petition for reorganization in the United States District Court for the Eastern District of New York ("the Bankruptcy Court"). On June 8, 1981, the Bankruptcy Court approved a Plan and Agreement of Merger, whereby Lafayette

was merged into Wards. Wards took possession of all Lafayette's rights under the lease. Complaint, pp. 2–3. Wards alleges that, because of Connecticut Post's breach of the lease, Wards, as successor in interest to Lafayette, has suffered damages.

Defendant argues that this action should be dismissed because Wards is barred from the use of Connecticut's courts, since it is a foreign corporation that has failed to register to transact business in Connecticut, as required by Conn.Gen.Stat. § 33–396(a).[1] *See* Conn.Gen.Stat. § 33–412(a);[2] *Poly-Pak Corp. of America v. Barrett*, 1 Conn.App. 99, 103, 468 A.2d 1260 (Dec. 20, 1983).

> This is a diversity action and, if the plaintiff is barred from the use of the courts of the State of Connecticut, it cannot maintain its suit in the United States District Court for the District of Connecticut. *Woods v. Interstate Realty Co.*, 337 U.S. 535 [69 S.Ct. 1235, 93 L.Ed. 1524] ...; *Arrowsmith v. United Press International*, 2 Cir., 320 F.2d 219.

*Armor Bronze & Silver Co. v. Chittick*, 221 F.Supp. 505, 510 (D.Conn.1963).

Wards concedes that prior to commencing suit, and until May 1983, it had not registered to do business in Connecticut. However, it claims that it was not transacting business in Connecticut for the purposes of § 33–396(a) and § 33–412(a) and therefore it was not required to obtain a certificate of authority to transact business. Connecticut Gen.Stat. § 33–397(a) provides that:

> [a]ny foreign corporation may purchase, hold, mortgage, lease, sell and convey

real and personal estate in this state for its lawful uses and purposes, and may hold such property as it may acquire by foreclosure or otherwise in payment of debts due such corporation without such action constituting transacting business in this state for the purposes of this chapter.

"In judging whether or not a particular activity is 'transacting business' consideration must be given to Section 33–397(a) of the Connecticut Statutes ...." *Armor Bronze*, 221 F.Supp. at 510. Therein are set forth activities that do not constitute transacting business.

No Connecticut case appears to have interpreted § 33–397(a) to allow a foreign corporation to lease real estate in Connecticut without a certificate of authority on the ground that such leasing does not constitute transacting business in the state. However, this court is free "... to consider all the data the highest court of the state would use to determine how the highest court of the state would decide." Wright, *Law of Federal Courts*, at 373 (4th ed. 1983) (footnote omitted).

It has been held that a foreign corporation which leased computer equipment to three Connecticut locations was not transacting business in Connecticut for purposes of Conn.Gen.Stat. § 33–396(a), "... since 33–397(a) eliminates a lease transaction involving personal property from the definition of 'transacting business' in Connecticut, under § 33–396." *Levin-Townsend Computer Corp. v. Town of Stratford*, 29 Conn.Supp. 121, 274 A.2d 885, 890 (1970).[3]

---

**1.** Conn.Gen.Stat. § 33–396, Authority to transact business:

> (a) No foreign corporation ... shall transact business in this state until it has procured a certificate of authority so to do from the secretary of the state, ....

**2.** Conn.Gen.Stat. § 33–412 Rights and liabilities of corporation transacting business without authority:

> (a) No foreign corporation transacting business in this state in violation of section 33–396 shall be permitted to maintain any action, suit or proceeding in any court of this state unless such corporation has obtained a certificate of authority. Nor shall any action, suit or pro-

ceeding be maintained in any court in this state by any successor or assignee of such corporation on any right, claim or demand, arising out of the transaction of business by such corporation in this state, until a certificate of authority has been obtained by such corporation or by a corporation which has acquired all or substantially all of its assets.

**3.** This was a tax liability case, wherein the court concluded "... that the exemption of leasing contracts negotiated by a foreign corporation under § 33–397(a), must likewise control the determination of tax liability, under § 12–9." *Levin-Townsend*, 274 A.2d at 890.

In another trial court decision the "... plaintiff's assigner [both plaintiff and its assigner were foreign corporations] was a franchiser of muffler replacement centers and leased certain equipment to the defendant, a licensee in Connecticut." Cuddy, *Law of Corporations*, 56 Conn. Bar Journal 119, 126 (1982), discussing *Tilden Commercial Alliance, Inc. v. Guerriere*, 7 C.L.T. No. 22, at 13 (June 1, 1980). To the extent that this transaction constituted a lease of personal property pursuant to § 33–397(a), it was not "transacting business" for the purposes of § 33–396. *Tilden*, C.L.T. at 15.

> Connecticut, as a matter of state policy, has recognized the advantage of not imposing qualifications on the right of foreign corporations to conduct some kinds of commercial and financial transactions, since it has enumerated certain business activities of foreign corporations which do not constitute 'transacting business.'

*Southern New England Distrib. Corp. v. Berkeley Fin. Corp.*, 30 F.R.D. 43, 45 (D.Conn.1962).

Connecticut requires corporations which transact business in the state to obtain a certificate of authority. It denies access to its courts to corporations which do not comply. It has chosen to exempt, from those whose activities constitute transacting business, corporations which engage in leasing.

 Under § 33–397(a) the plaintiff's assumption by assignment of the lease rights of Lafayette in premises in the Connecticut Post Shopping Center granted by Multi-Vest, Connecticut Post's predecessor in interest, does not constitute transacting business in Connecticut.[4]

The defendant points to the fact that Wards leases and in turn subleases three facilities in Connecticut. Defendant's Memorandum in Support of Motion to Dismiss, p. 2. This does not change the court's conclusion. Defendant's detailed

analysis suggests significant business activity related to the lease and sublease of the properties involved. All of these activities are nominal incidents of the leasing of property and as related to the exempted activity, leasing, do not take plaintiff outside the exemption qualification. There is nothing in the statute to suggest that the rationale behind the statute requires that a distinction be drawn between leasing and subleasing, a form of leasing. The standard for transacting business is qualitative, not quantitative. *See Southern New England Distrib. Corp. v. Berkeley Fin. Corp.*, 30 F.R.D. 43, 46 (D.Conn.1962). The statute is not limited to nor does it differentiate between leasing as lessee or as lessor.

By its clear terms, § 33–397(a) exempts plaintiff's leasing of real estate in Connecticut from the definition of transacting business in this state under § 33–396(a). Therefore, § 33–412(a) is not applicable and does not bar the plaintiff from maintaining this action in this court. The defendant's Motion to Dismiss is denied.

SO ORDERED.

---

**4.** The court is aware that the plaintiff obtained a certificate of authority to transact business on May 9, 1983, after the February 18, 1983, filing of the defendant's Motion to Dismiss; but does not regard the application or issuance of this certificate as conceding or establishing that plaintiff was transacting business in Connecticut.